**Phil BAKES, et al., Appellants**

v.

**The OFFICIAL COMMITTEE OF UNSECURED CREDITORS, et al., Appellees**

**No. 06–20582–CIV.**

United States District Court, S.D. Florida, Miami Division.

Feb. 19, 2007.

Names & Addresses, Steven W. Davis, Esq., Boies Schiller & Flexner, Miami, FL,

Adam C. Harris, Esq., Schulte Roth & Zabel, New York City, for Plaintiff.

Names & Addresses, Craig V. Rasile, Esq., Hunton & Williams, Miami, for Defendants.

## ORDER

JORDAN, District Judge.

This appeal arises from the bankruptcy court's determination not to count votes submitted by certain creditors in opposition to the Far & Wide Corporation reorganization plan because the votes were submitted on pre-marked ballots. For the reasons explained below, the bankruptcy court's decision is AFFIRMED, and this case is CLOSED.

## I. BACKGROUND FACTS

Far & Wide Corporation and its affiliates filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on September 24, 2003. On May 9, 2005, the Official Committee of Unsecured Creditors and the United States Tour Operators (together, the "plan proponents") filed a disclosure statement in support of their reorganization plan. The disclosure statement was approved and subsequently served on all Far & Wide claimholders, along with a form ballot.

After the conclusion of the initial round of balloting of all classes of claim holders, the bankruptcy court found it appropriate to re-ballot Class III, due to the confusing series of votes submitted by certain members of the class. In particular, thirty employee-creditors of Far & Wide initially voted to accept the plan, then changed their votes to rejecting ballots, and then, after the ballot deadline, changed their ballots back to accepting votes.

To avoid confusion in the second round of balloting of Class III, the bankruptcy court directed the plan proponents to send Class III creditors a new form ballot that was personalized to include the creditor's class and the amount of his claim, so "all [the creditor would] have to do is vote yes or no" on the reorganization plan. *See* July 14, 2005 Hearing Transcript at 31. The court also required the plan proponents to send the Class III voters a supplemental disclosure statement that more clearly described their proposed treatment under the plan, and gave the plan opponents, including the appellants, the opportunity to include their own materials in the approved supplemental disclosure package. The appellants declined this opportunity. On August 25, 2005, the plan proponents served each of the Class III creditors with the approved supplemental disclosure and customized ballot, substantially similar to the official ballot form. There is no dispute that all Class II creditors received the supplemental package, including the official ballot form.

On September 9, 2005. Far & Wide's former officers (all of whom are appellants in this case) sent the Class III creditors their own solicitation package. The package included a form titled "notice of vote," which contains the Far & Wide bankruptcy case caption and then states:

> I hereby vote to reject the plan of reorganization proposed by the [plan proponents] for all claims and in all classes in which I am entitled to vote. This notice supercedes any and all previously submitted ballots on the plan of reorganization that I may have submitted.

The form provides blank lines for the creditor to fill in his name, but does not include any option to vote to accept the plan. The solicitation package also included a letter that directs creditors to vote to reject the plan by completing and returning the original ballot, or to change their vote to reject (if they have already voted to accept) by

completing and returning the notice of vote form.

On September 13, 2005, the plan proponents sent a solicitation letter in favor of the plan, and on September 15, 2005, Far & Wide's former officers sent a second letter soliciting votes against the plan. This second letter also included the "notice of vote" form. This time the letter directed voters as follows:

> If you have not already done so, we encourage you to affirmatively reject the committee's plan by faxing back the original ballot sent to you by Hunton & Williams marked "reject." If you have already voted to accept and now wish to change your vote to reject, or if you have lost your original ballot, simply complete the form enclosed with this letter and fax it to Hunton & Williams.

The letter suggested that creditors could use the "notice of vote" form as an original ballot because of the concern that a creditor who lost his original ballot might be unable to obtain a replacement ballot in sufficient time.

Thirty-eight Class III creditors returned the "notice of vote" form. Of these Class III creditors, twenty-seven did not submit an official ballot form but executed and returned the "notice of vote" form as their only ballot. These "notice of vote" forms submitted a ballots are hereinafter referred to as the "non-conforming ballots". On September 23, 2005, the plan proponents filed a motion seeking to designate, or alternatively strike, all votes submitted on the "notice of vote" form, arguing that the form was a "pre-marked ballot" in violation of 11 U.S.C. § 1125, Bankruptcy

Rule 3018, and Local Rule 3018–1. At the September 28, 2005, hearing on the motion to strike the ballots, the bankruptcy court determined that the twenty-seven non-conforming ballots would be striken (the "designation order"). The bankruptcy court explained that the "notice of vote" forms would not be counted as original ballots because

> the only piece of paper that [the twenty-seven creditors] submitted was not the official ballot or anything close, it was a document that said ["]I reject the plan["], which this court, agreeing with *Gulph Woods* and *Petroleum Products,* finds that form of ballot in the context of this case to be, per se, impermissible.

September 28, 2005 Hearing Transcript at 83–84 (italics added). The bankruptcy court expressly stated that its decision to strike the "notice of vote" forms was not made pursuant to 11 U.S.C. § 1126(e) and that the plan opponents' solicitations were not made in bad faith.[1]

However, the bankruptcy court determined that the eleven "notice of vote" forms submitted by creditors who had previously submitted an official ballot would be counted because these creditors had already chosen to vote in favor of the plan and now expressed the choice to change to a rejection. Thus, the bankruptcy court did not wholly reject the "notice of vote" form, but simply rejected its use as an original ballot.

The appellants filed a motion to reconsider the designation order. As exhibits to their motion, the appellants submitted affidavits and properly executed "rejection"

---

1. In relevant part, § 1126(e) provides that the bankruptcy court may "designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in accordance with the provisions of this title." Thus, a court may designate (or disregard) an otherwise valid acceptance or rejection of a plan, if it finds that the vote was solicited in bad faith. However, the parties do not raise the issue of designation under § 1126(e) in this appeal, so I do not address it.

ballots from twenty-two of the twenty-seven creditors whose votes were not counted.

On December 19, 2005, the bankruptcy court entered an order denying the appellants' motion for reconsideration. The bankruptcy court refused to consider the additional evidence and reiterated its reasons for striking the non-conforming ballots:

> Within the corresponding official bankruptcy form, Form 14 titled Ballot for Accepting or Rejecting Plan, among other things, two empty boxes appear allowing a voter to mark either an acceptance or rejection of a plan. Comprehensive instructions included within Form 14 provide for the common sense direction that the person voting on the plan is asked to check only one box ... Unlike the local form, the notice of vote did not offer Class III employees an opportunity to either choose to accept or reject the plan ...

> Whether a box on a ballot is premarked or instead states, please take notice that I hereby vote to reject the plan, the effect is the same. It taints the [ ] election process by presuming something that only the voter can and should decide upon. As such, as a matter of law, the notices of vote which were cast without being preceded by a ballot, much like the premarked ballots in *Gulph Woods* and *Petroleum Products,* were, per se, improper and thus were appropriately stricken.

November 21, 2005 PM Session Hearing Transcript at 10–13.

On December 29, 2005, the appellants filed a notice of appeal, pursuant to Bankruptcy Rule 8001, from the bankruptcy court's orders denying reconsideration and confirming Far & Wide's reorganization plan. The appellants subsequently filed a statement of issues on appeal, pursuant to Bankruptcy Rule 8006, raising four issues:

(1) Did the bankruptcy court err by ordering that the pre-marked ballots submitted by certain creditors be disregarded as votes on the plan?

(2) Did the bankruptcy court err in denying the motion for reconsideration?

(3) Did the bankruptcy court err in determining that class 3 had voted to accept the plan?

(4) Did the bankruptcy court err in determining that the plan satisfied § 1129(a)(8) of the Bankruptcy Code?

There is no dispute that, if the bankruptcy court correctly determined not to count the non-conforming ballots, then it correctly determined that Class III accepted the plan and that the plan satisfied the requirements of § 1129(a)(8). Alternatively, there is no dispute that, if the bankruptcy court incorrectly disregarded the non-conforming ballots, then Class III rejected the plan and the plan did not satisfy the requirements of § 1129(a)(8). Therefore, while the appellants present four separate issues on appeal, the only real dispute between the parties in this appeal is whether the bankruptcy court erred in determining that the pre-marked "notice of vote" ballots should be disregarded.

## II. Standard of Review

■ The bankruptcy court determined that the non-conforming ballots violated Rule 3018 as a matter of law because they were pre-marked. Accordingly, I must review the bankruptcy court's determination under a *de novo* standard. *See In re Chase & Sanborn Corp.,* 904 F.2d 588, 593 (11th Cir.1990).

The plan proponents agree that the bankruptcy court's decision would be subject to *de novo* review, but argue that an abuse of discretion standard applies here, because the appellants appealed only the reconsideration order and not the underly-

ing designation order. I disagree. The appellants' failure to include the designation order in the notice of appeal does not affect the standard of review in this case. *See* FED. R. BANKR. P. 8001 (a notice of appeal is only required to contain the names of all parties to the order appealed from; it need not designate the order being appealed from); FED. R. BANKR. P. 8006 (appellant must file a separate statement of the issues to be presented on appeal, which puts the parties on notice of the issues that will be raised on appeal). *See also In re Dudley*, 249 F.3d 1170, 1174 (9th Cir.2001); *Hounsom v. United States*, 325 B.R. 319, 323 (M.D.Fla.2005).

## III. DISCUSSION

There is no question that, in fashioning the process for confirmation of a plan of reorganization, Congress enfranchised creditors by allowing them to vote to accept or reject a plan. However, like any election, the process by which creditors vote on a plan of confirmation is governed by rules designed to insure the integrity and manageability of the voting process. Federal Rule of Bankruptcy Procedure 3018, which governs the form of an acceptance or a rejection of a Chapter 11 plan, provides:

> An acceptance or rejection *shall* be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and *conform to the appropriate Official Form*. If more than one plan is transmitted pursuant to Rule 3017, an acceptance or rejection may be filed by each creditor or equity security holder for any number of plans transmitted and if acceptances are filed for more than one plan, the creditor or equity security holder may indicate a preference or preferences among the plans so accepted.

(emphasis added). I agree with the bankruptcy court and conclude that the "notice of vote" form did not conform to the official form as a matter of law, and therefore that votes submitted on the "notice of vote" form should not be counted.

█ The appropriate official form, Official Form 14, includes two empty boxes to allow a creditor to vote either to an accept or reject a plan. These two empty boxes are *the* essential feature of the official ballot form because they present creditors with the choice to accept or reject the plan-thereby giving creditors a say in the reorganization process. By contrast, it is undisputed that the "notice of vote" form sent by the appellants was preprinted to state that the creditor rejects the plan; it did not give creditors the choice to accept or reject. As such, the pre-marked ballot misleads the voter by creating the impression that the voter is not entitled to make a choice, and thus "taints the free election process." *In re Petroleum Products, Inc.*, 99 B.R. 451, 453 (Bkrtcy.D.Kan.1989); *Cf. Fladell v. Palm Beach County Canvassing Bd.*, 772 So.2d 1240, 1242 (Fla.2000) (a court should not void an election for ballot form defects "unless such defects clearly operate to prevent that free, fair and open choice"). For this reason, the only two other published decisions on the issue of pre-marked ballots in bankruptcy reorganization plan elections have held that a pre-marked ballot was per se improper. *See In re Gulph Woods Corp.*, 83 B.R. 339, 343 (Bkrtcy.E.D.Pa.1988) (pre-marking a ballot is per se impermissible); *Petroleum Products, Inc.*, 99 B.R. at 453 (same). In fact, the *Gulph Woods* court found pre-marked ballots so offensive to the voting process that it stated: "We have never known any plan proponent to be so presumptuous as to have not instinctively perceived the impropriety of [pre-marking a ballot.]" *Gulph Woods*, 83 B.R. at 343.

Pre-marked ballots are also a problem for the voting process because their presence is bound to create substantial and unnecessary confusion, as it did here. Creditors end up receiving more than one ballot in connection with a single voting process, and may end up submitting multiple ballots, or (as here) the wrong one. As a result, the bankruptcy court may be left with the unmanageable task of interpreting the various forms of ballot (or ballots) submitted by each creditor. Such confusion is easily avoidable by using a single form of ballot that contains all possible choices. For example, if the appellants here were genuinely concerned that creditors had lost their original ballots, the appellants could have included another copy of the unmarked, original ballot in their solicitation packages. Alternatively, the appellants could have sought approval from the bankruptcy court prior to sending their materials, but they chose not to pursue that course.

I recognize that there is limited authority to guide my decision here, and that *Gulph Woods* and *Petroleum Products* are, in various respects, distinguishable. In those two cases, the courts' determinations that a pre-marked ballot was per se improper did not necessarily have the effect of denying any claimholders' vote, because the issue arose and was decided before the voting process was completed. Thus, in *Gulph Woods*, the bankruptcy court determined that the only necessary remedy was to prohibit the plan opponent from dispatching any future communications with creditors. *See Gulph Woods*, 83 B.R. at 343–44. Similarly, in *Petroleum Products*, the court found that the proper remedy was to permit the debtor to attempt to reach creditors who received the improper mailing to advise them that it was not a proper ballot and should not be submitted. *See Petroleum Products, Inc.*, 99 B.R. at 453. Still, the *Petroleum Products* court

also held that "[i]f any pre-marked ballots are actually received by the clerk's office they will not be counted." *Id.*

■ Here, the bankruptcy court had already allowed for a second round of voting for Class III creditors. Therefore, the bankruptcy court correctly decided that it must give some finality to the voting process, and that finality could only be achieved by counting the proper ballots that were timely submitted. For the same reasons, the bankruptcy court was correct in refusing to consider affidavits of the twenty-seven creditors regarding their actual intent to vote to reject the plan. Consideration of affidavits may seem like a possible (though mildly cumbersome) solution in a case where the election outcome depends on the votes of only two dozen or so creditors. But voting rules must apply to big and small elections alike, and there is no question that the bankruptcy voting process would become completely unmanageable if the bankruptcy court could be required to review hundreds or thousands of affidavits from creditors regarding the actual intent behind their vote on non-authorized forms. Moreover, if other parties disputed the meaning or trustworthiness of the statements made in such affidavits, the bankruptcy court might then need to hear testimony from the hundreds or thousands of creditors regarding their intent—thereby dragging out the voting process for several months. This is why determination of the voter's intent must be confined to specific standards for determining intent from the official ballot only, and not from any extrinsic evidence such as affidavits or testimony. *Cf. Bush v. Gore*, 531 U.S. 98, 105–106, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000) (rejecting the variance in standards applied by different counties through the State of Florida to determine whether to accept or reject a contested ballot and stating that "[t]he

search for intent can be confined by specific rules [used to interpret the contested ballots] designed to ensure uniform treatment").

The votes of certain creditors were not counted as a result of the bankruptcy court's decision to strike the non-conforming ballots and to exclude the affidavits. This result, in my view, is not only correct because it insures the integrity and manageability of the voting process in future cases, but it is also fair in this case. There are only two possible parties to blame for the result that certain votes were not counted: the twenty-seven voters, to the extent that they did not follow the directions in the court-approved solicitation package; or, the appellants, who potentially misled or confused voters with their second solicitation letter and who declined the opportunity to have their materials pre-approved by the bankruptcy court.

## IV. CONCLUSION

The bankruptcy court's decision to strike the non-conforming ballots is AFFIRMED. This case is closed.